774 So.2d 716 (2000)
Cecelia Watkins LIVINGSTON, Appellant,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellee.
No. 2D98-3490.
District Court of Appeal of Florida, Second District.
March 3, 2000.
Rehearing Denied April 7, 2000.
Arthur Liebling of Arthur Liebling, P.A., Clearwater, for Appellant.
*717 Anthony J. Parrino of Reynolds & Stowell, P.A., St. Petersburg, for Appellee.
ALTENBERND, Acting Chief Judge.
Cecelia Watkins Livingston appeals a final summary judgment entered in favor of State Farm Mutual Automobile Insurance Company ("State Farm") in county court. The county court certified a question to this court and we accepted jurisdiction. See Fla. R.App. P. 9.160. We affirm the summary judgment. As a general rule, if an insured has assigned her right to receive personal injury protection (PIP) benefits to a health care provider, the insured may not file a lawsuit to collect the assigned benefits. The insured would only have a claim to pursue against the insurance company if the health care provider were permitted to rescind the assignment.

I. THE FACTS
Ms. Livingston filed a typical complaint for PIP benefits in county court. The complaint contains few factual allegations. Ms. Livingston alleged she was involved in an automobile accident on December 29, 1994. She was injured and received medical treatment. At that time, she had automobile insurance with State Farm. Although the insurance policy is not in the record, the complaint alleges that the policy provided applicable personal injury protection coverage. The complaint alleges without any factual specificity that Ms. Livingston had executed an application for benefits, which State Farm had declined to pay.
State Farm filed a motion for summary judgment supported by an affidavit of a claims adjuster. The affidavit establishes that the only benefits at issue in this case involve treatment provided by a chiropractor and $1200 for services provided by Advantage Medical Diagnostics. State Farm's affidavit establishes that each health care provider had accepted an assignment of benefits from Ms. Livingston. Advantage Medical Diagnostics had demanded arbitration before State Farm filed the motion for summary judgment.
The trial court granted the summary judgment on the theory that Ms. Livingston had assigned her rights concerning all the benefits in controversy and that she no longer had a claim against State Farm. The county court certified to this court the question of whether the execution of the assignment to the health care provider bars this action. We conclude that the assignment either bars the lawsuit or renders it premature.

II. THE LAW
This case involves the controversial statutory mechanism created to streamline the resolution of disputed PIP claims. Under section 627.736(5), Florida Statutes (1993), a health care provider may "charge only a reasonable amount" for its services. In order to minimize the impact upon the insured patient of disputes over the reasonableness of the health care provider's charges, the statute further provides:
Every insurer shall include a provision in its policy for personal injury protection benefits for binding arbitration of any claims dispute involving medical benefits arising between the insurer and any person providing medical services or supplies if that person has agreed to accept assignment of personal injury protection benefits. The provision shall specify that the provisions of chapter 682 relating to arbitration shall apply. The prevailing party shall be entitled to attorney's fees and costs.
Even though a health care provider's decision to use a statutory assignment is voluntary, the Florida Supreme Court recently declared unconstitutional the portions of this statute requiring mandatory arbitration and imposing a prevailing party standard with regard to attorneys' fees. See Nationwide Mutual Fire Ins. Co. v. Pinnacle Medical, Inc., 753 So.2d 55 (Fla. 2000). Pinnacle did not address whether a health care provider may agree to arbitration when it accepts an assignment. In *718 this case, Advantage Medical Diagnostics accepted an assignment of Ms. Livingston's benefits and demanded arbitration. We do not know whether this arbitration has concluded. As a practical matter, the outcome of this appeal should be the same whether the health care providers arbitrate or litigate their assigned claims.
The dispositive issue in this case concerns the right of the insured to bring a lawsuit for claims that have been assigned to a health care provider. The Fifth District has held that an unqualified assignment transfers to the assignee all the interest of the assignor under the assigned contract, and that the assignor has no right to make any claim on the contract once the assignment is complete, unless authorized to do so by the assignee. See State Farm Mutual Auto. Ins. Co. v. Gonnella, 677 So.2d 1355 (Fla. 5th DCA 1996); State Farm Fire & Casualty Co. v. Ray, 556 So.2d 811, 813 (Fla. 5th DCA 1990). The supreme court's pronouncement in Pinnacle does not alter this general rule.
From our perspective, the outcome of this case depends largely upon whether the insured, after the assignment, retains any risk of loss or any contingent liability that warrants an immediate, separate lawsuit against the insurance company. Without such damage, the insured does not have a claim for breach of contract against the insurance company and has no practical need to file the lawsuit. We conclude that the insured does not have such a claimat least while the health care provider has an unresolved dispute with the insurance company.
This is perhaps easiest to explain with an example. Assume that Ms. Livingston had received $1000 in chiropractic treatment. If all of the treatment related to the accident and everyone agreed that $1000 was a reasonable charge, State Farm would pay $800 and Ms. Livingston would owe $200.[1] Alternatively, if State Farm were to dispute the reasonableness of the bill after the chiropractor had accepted an assignment, the matter would either go to court or to arbitration. Assuming the fact-finder decided that the reasonable charge was only $500, State Farm would pay $400. The question then would be whether Ms. Livingston owed $100 as her share of the reasonable bill or whether the chiropractor could sue her for the entire $600 remaining unpaid on the original bill.
We are inclined to agree with the First and Fifth Districts that the assignment discussed in section 627.736 is unqualified and irrevocable. See Rittman v. Allstate Ins. Co., 727 So.2d 391, 394 (Fla. 1st DCA 1999); Ray, 556 So.2d 811. When Ms. Livingston's chiropractor accepted the assignment of benefits from her, he had the opportunity to either arbitrate or litigate the reasonableness of his fees with Ms. Livingston's insurance company both for himself and as Ms. Livingston's assignee. Therefore, he should have no right to sue his patient for the portion of his bill that is deemed unreasonable. He should collect only the 20% coinsurance amount from Ms. Livingston. Under this interpretation, the health care provider's action might reduce the amount of the coinsurance payment owing from Ms. Livingston, but it would never increase her obligation. Thus, the First and Fifth Districts reach a good, practical outcome. We do not adopt the position of the other two districts in this case only because there is no health care provider involved in this lawsuit, and we do not need to reach this issue to resolve this case.
Even if the assignment is not irrevocable and unqualified, the worst that could happen from Ms. Livingston's perspective in our hypothetical example is that the chiropractor could choose to sue her for $600 after he lost an arbitration or a lawsuit.[2] *719 If that is allowed, then Ms. Livingston could add State Farm as a third-party defendant because she was not a party to either the lawsuit or the arbitration and should not be bound by its determination if the chiropractor is allowed to sue her for the extra $500. Alternatively, if the chiropractor were allowed to revoke the assignment prior to arbitration or a lawsuit and seek payment directly from Ms. Livingston, she could then bring a typical county court lawsuit for PIP benefits. Because Ms. Livingston could sue State Farm if and when the need arises, there is no need to provide her with a cause of action while her claim has been assigned to a health care provider.
Affirmed.
FULMER and DAVIS, JJ., Concur.
NOTES
[1] Personal injury protection benefits do not cover 100% of medical expenses. By statute, such policies are required to cover only 80% of the reasonable expenses. See § 627.736(1)(a), Fla. Stat. (1993).
[2] If such claims were allowed, we would expect them to be rare. After a lawful finder of fact ruled that a provider's bill was "unreasonable," it would take considerable audacity for the provider to sue the patient for the unreasonable portion of the bill.